# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| ANTHONY and SUE UNRUH, § | |
|    Debtors/Appellants, § | |
| § | |
| v. § | **CIVIL ACTION NO. H-05-2746** |
| § | |
| RODNEY TOW, Chapter 7 Trustee, § | BR Case No. 04-35947-H1-7 |
|    Appellee. § | |

## MEMORANDUM AND ORDER

This case is before the Court on appeal from the United States Bankruptcy Court's June 16, 2005 Memorandum Opinion ("June 16 Opinion") denying Debtors/Appellants Anthony and Sue Unruh's motion to abandon their homestead or amend exemptions. The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). Having considered the parties' submissions, the full record on appeal, and applicable legal authorities, this Court **affirms** the Bankruptcy Court's June 16 Opinion.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Debtors owned approximately 70 acres in Dickinson, Texas, which they split into two parcels to enable them to obtain a construction loan. On one of the parcels, the 30-acre parcel, they built a home that was worth, with related improvements, almost $200,000.

In February 2004, the mortgage company providing financing appraised the house and 30 acres at a value of $350,000. At the April 2004 closing on the permanent financing of the home and 30 acres, the $350,000 appraisal was discussed with Mr. Unruh.[1]

Debtors filed a Chapter 7 bankruptcy petition on April 22, 2004, and filed their Schedules and a Statement of Financial Affairs on May 12, 2004. They scheduled the entire 70 acres of real property in Dickinson as having a current value of $330,000. Debtors chose federal exemptions pursuant to 11 U.S.C. § 522(b)(1)[2] for the purported $3,168 equity in the real property and their 100% interest in Nell International.[3]

In December 2004, Debtors filed an amended schedule again claiming an exemption for the real property which they again valued at $330,000. They continued to claim the federal exemptions so that their interest in Nell International could be included.

Several months after the bankruptcy case was filed, the Trustee hired a real estate agent who estimated the value of Debtors' real property in excess of $700,000.

---

[1] At the 341 creditor's meeting, Mr. Unruh testified that his valuation of the real property was based upon an appraisal.

[2] A debtor may choose to exempt property under either federal exemptions or under state or other exemption laws. 11 U.S.C. § 522(b).

[3] At the time of the bankruptcy filing, Mr. and Mrs. Unruh were each receiving $5,000 per month from Nell International.

The Trustee asserts that the value at the time of this appraisal was not materially different than the value at the time Debtors filed their petition.[4]

In January 2005, the Bankruptcy Trustee filed an Objection to Debtors' Claim of Exemptions, Debtors filed a request for leave to amend, and the Trustee objected. In February 2005, Debtors filed a second amended schedule listing the value of the real property as $700,000, claiming an exemption for the full value, and electing the state law homestead exemption pursuant to 11 U.S.C. § 522(b)(2). In accordance with the state law exemption provisions, Debtors no longer claimed an exemption for their interest in Nell Corporation, which had recently filed a Chapter 11 bankruptcy petition. The Trustee objected to the amendment.

The Bankruptcy Court held hearings on this matter over three days in March and April 2005. In its June 16 Opinion, the Bankruptcy Court found that Debtors intentionally undervalued their real property, that their conduct constituted bad faith, and that allowing the amendment would prejudice Debtors' creditors. As a result, the Bankruptcy Court denied Debtors' request to amend and denied any exemptions beyond those federal exemptions under the Bankruptcy Code. This appeal followed.

## II.   **STANDARD OF REVIEW**

---

[4]   Although there was a contract to purchase the property for $700,000, the sale was not consummated and was not relied upon by the Bankruptcy Court in its June 16 Opinion.

The Court reviews a bankruptcy judge's conclusions of law *de novo* and findings of fact under the "clearly erroneous" standard. *Barron v. Countryman*, 432 F.3d 590, 594 (5th Cir. 2005). Mixed questions of law and fact are reviewed *de novo*. *In re Quinlivan*, __ F.3d. __, 2005 WL 3469702 * 3 (5th Cir. Dec. 20, 2005); *In re Stonebridge Technologies, Inc.*, 430 F.3d 260, 265 (5th Cir. 2005).

A factual finding is clearly erroneous "only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *Robertson v. Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (internal quotations and citation omitted). Stated differently, a "factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole." *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). "As long as there are two permissible views of the evidence," the Bankruptcy Court's "choice between competing views" is not clearly erroneous. *In re Acosta*, 406 F.3d 367, 373 (5th Cir. 2005) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). The district court must give "due regard" to the bankruptcy court's assessment of witness credibility. *Robertson*, 330 F.3d at 701.

### III.   ANALYSIS

#### A.   Leave to Amend

A debtor may generally amend a bankruptcy schedule "as a matter of course at any time before the case is closed." FED. R. BANKR. P. 1009(a). Leave to amend is

liberally allowed. *See In re Williamson*, 804 F.2d 1355, 1358 (5th Cir. 1986); *see also In re Michael*, 163 F.3d 526, 529 (9th Cir. 1998). Leave to amend may be denied, however, if there is "bad faith, concealment of property, or prejudice to creditors." *See Williamson*, 804 F.2d at 1358; *see also Thompson v. Powell*, 413 F.2d 276, 277 (5th Cir. 1969) (stating that amendments should be allowed "in the absence of bad faith or prejudice to the creditors"). Either bad faith, concealment of property, or prejudice to creditors would allow a Bankruptcy Court to deny leave to amend; a denial does not require the presence of all three. *See Williamson*, 804 F.2d at 1358; *see also In re Hannigan*, 409 F.3d 480, 481 (1st Cir. 2005).

In this case, the Bankruptcy Court found that Debtors acted in bad faith by intentionally undervaluing their real property. The Bankruptcy Court also found that Debtors' amendment to elect state exemptions after having previously elected federal exemptions, which included their interest in Nell International, would prejudice creditors because the Trustee had been precluded from controlling the ongoing business for the benefit of creditors.

### B. Bad Faith

The debtor has an absolute duty to file schedules that are complete and accurate. *See Rolland*, 317 B.R. at 413. Indeed, the "operation of the bankruptcy system

depends on honest reporting." *In re Yonikus*, 996 F.2d 866, 872 (7th Cir. 1993) (citation omitted).

Although Debtors argue that only total concealment of an asset can constitute bad faith, there is ample legal precedent for denying leave to amend where the debtors intentionally undervalued their home in bad faith.[5] *See id.* at 482; *Bauer v. Iannacone*, 298 B.R. 353, 357 (8th Cir. BAP 2003); *In re Rolland*, 317 B.R. 402, 415-16 (Bankr. C.D. Cal. 2004). A "debtor's intent is a question of fact reviewed under the clearly erroneous standard." *Hannigan*, 409 F.3d at 482. Similarly, a Bankruptcy Court's "finding that the Debtor's intentional undervaluing of the property amounts to bad faith" is reviewed under the clearly erroneous standard. *Id.*

In this case, the Bankruptcy Court found that Debtors intentionally undervalued their real property in bad faith, and that finding is not clearly erroneous. The Bankruptcy Court observed Debtors as they testified during the hearing in this matter, and found their testimony to lack credibility. Although Mr. Unruh testified that he had investigated appraisals on file with the Galveston County Appraisal District for his property and adjacent properties, the Bankruptcy Court found that this "investigation" was nothing more than an "after-the-fact attempt to justify a low value on the

---

[5] The Court also notes that "concealment of property" is listed in *Williamson* as a basis for denying leave to amend separate and in addition to bad faith. *See Williamson*, 804 F.2d at 1358.

property." *See* June 16 Opinion, pp. 9-10. Moreover, Mr. Unruh had previously testified at the 341 meeting that he based his valuation of the property at $330,000 on a prior appraisal. There was evidence before the Bankruptcy Court that Mr. Unruh knew when he filed the initial and first amended schedules that the house and the 30-acre tract were valued at $350,000 by the mortgage company providing the construction financing, an amount higher than he listed for the house and both parcels. This evidence supports the Bankruptcy Court's finding that Debtors undervalued their real property intentionally and significantly, and that this constituted bad faith. The Bankruptcy Court's findings on the bad faith issue are not clearly erroneous and, on this basis alone, the June 16 Opinion can be affirmed.

### C.  Prejudice

The Bankruptcy Court also found that the proposed amendment would prejudice the creditors. Leave to amend bankruptcy schedules may also be denied if it will prejudice the creditors. *See Williamson*, 804 F.2d at 1358. The issue of prejudice focuses on the harm to the creditor "because of some detrimental reliance on the debtor's initial position." *Id*.

In this case, Debtors initially chose the federal exemptions in order to exempt their 100% interest in Nell International, which was then paying them each $5,000 per month. Because the interest was exempt, Debtors rather than the Trustee maintained

control of the company.  Had the true value of the real property been disclosed, Debtors would have been required to choose between exempting either the business or the homestead.  Similarly, had Debtors initially chosen the state exemptions, the business interest would not have been exempted.  If the business interest had not been listed as exempt, the Trustee could have taken control of the business and attempted to maximize its value for the benefit of the creditors.  If Debtors had been permitted to amend belatedly in February 2005, for the purpose of electing state rather than federal exemptions, the Trustee would have obtained Nell International only after it had filed a bankruptcy petition under Chapter 11.  The Trustee would have lost whatever business opportunity existed and would have also lost all interest in the real property, which has a significantly higher value than Debtors claimed in their original and first amended schedules.  The Bankruptcy Court found that this constitutes prejudice to creditors and that finding is not clearly erroneous.  This prejudice to creditors is a separate and independent basis for affirming the Bankruptcy Court's June 16 Opinion.

## IV.  CONCLUSION AND ORDER

Having applied the relevant standards of review, the Court concludes that the Bankruptcy Court's factual findings regarding bad faith and prejudice to creditors are not clearly erroneous.  Accordingly, the Court concludes that the denial of Debtors' motion to amend their exemptions should not be reversed, and it is hereby

**ORDERED** that the Bankruptcy Court's June 16 Opinion is **AFFIRMED**.  The Court will issue a separate Final Order.

SIGNED at Houston, Texas, this **30th** day of **January, 2006**.

_____
Nancy F. Atlas
United States District Judge